Michael WILKINS, Jerome Wilkins, and Christina Wilkins  *v.*
FOOD PLUS, INC., Teresa Cain, and John Wilkinson

CA 06-552                                    257 S.W.3d 107

Court of Appeals of Arkansas
Opinion delivered May 16, 2007

*J. Carl Bush*, for appellant.

*Ledbetter, Cogbill, Arnold & Harrison, LLP,* by: *Ronald D. Harrison* and *Jeffrey D. Rickard,* for appellees.

JOHN MAUZY PITTMAN, Chief Judge. Appellants Michael Wilkins and his parents, Jerome Wilkins and Christina Wilkins, sued appellees Food Plus, Inc., Jane Doe I, and John Doe I in Sebastian County Circuit Court on September 16, 2004, for false imprisonment, which has a one-year statute of limitations, because of an incident that occurred in the store on October 6, 2003. On January 13, 2005, appellants filed a motion for extension of time until February 11, 2005, to serve appellees, stating that they had made several unsuccessful attempts to serve the store's president over the past two or three weeks and that their attorney had been busy with other cases and continuing legal education classes.

On February 10, 2005, appellants filed another motion for extension of time to serve appellees. They stated that, since filing the first motion, their process-server had been unsuccessful in serving process and that their attorney had been tied up in other legal matters until February 7. Appellants asked for an extension until February 28, 2005, to serve the store and until March 30, 2005, to serve Jane Doe and John Doe. On February 11, 2005, the circuit court granted both motions, giving them until February 28, 2005, to serve the store and until March 30, 2005, to serve the Doe defendants, after conducting discovery to learn their identities. On February 15, 2005, the circuit clerk first signed a summons issued to Food Plus. Food Plus was served on February 23, 2005. Food Plus filed an answer on March 11, 2005, raising the defenses of statute of limitations, insufficiency of process, and insufficiency of service of process and objecting to the court's subject-matter and personal jurisdiction.

On March 30, 2005, appellants moved for an extension of time until May 30, 2005, to serve Jane Doe and John Doe. This motion was immediately granted. On May 26, 2005, appellants moved for an extension of time until June 30, 2005, to serve an amended complaint and a summons on the Doe defendants. The circuit court granted this motion. On June 30, 2005, appellants filed another motion for extension of time until July 18, 2005, to serve the Doe defendants. The circuit court granted this motion the next day.

Appellants filed a first amended complaint on July 8, 2005, adding Teresa Cain and John Wilkinson as defendants. The circuit

clerk signed summonses issued to Cain and Wilkinson on July 12, 2005. Cain and Wilkinson were served on July 14, 2005. In its answer to appellants' first amended complaint, Food Plus raised the same objections as before.

Food Plus moved to dismiss on August 2, 2005, arguing that appellants had failed to show good cause in their motions for extension and pointing out that a summons for Food Plus had not been issued until February 15, 2005, more than 120 days after the filing of the complaint. Wilkinson also filed a motion to dismiss, arguing that appellants had received five extensions to serve him, none of which contained a showing of good cause. He argued that the service of process on him was insufficient because the summons was not issued within 120 days of the filing of the complaint or within any proper extension of time. In the alternative, he filed an answer to the complaint, raising the defenses of statute of limitations, improper venue, insufficiency of process, and insufficiency of service of process, as well as lack of subject-matter and personal jurisdiction. Cain moved to dismiss on the same grounds asserted by Wilkinson and, in the alternative, filed an answer raising the same defenses.

In response to Food Plus's motion, appellants argued that the doctrine of laches should apply and stated that their recitation of facts about their attorney's hectic schedule in their motions for extension showed good cause. In response to the motions filed by Cain and Wilkinson, appellants raised the same laches defense and argued that their attorney had been too busy to determine the Doe defendants' identities and serve them with process in a timely fashion.

At a hearing on the motions to dismiss, appellants' attorney stated that he had hired the process-server on January 3, 2005, and had provided him with a summons that was to be issued on that day; the process-server, however, had failed to take the summons to be signed at the clerk's office. Upon extensive questioning by the trial court, appellants' attorney defended his failure to have the summons issued when he filed the complaint by explaining that he had been very busy. The process-server, however, testified that he did not recall having been asked to get the summons. The trial judge made the following ruling from the bench:

> Well, Mr. Bush, what I am most distressed about is that no effectual summons was ever issued until after the time period. That's your responsibility to do. You've represented to the Court

— at least the Court was under the opinion, when it signed this first extension to serve, that, like every other case I'm aware of, you get your summons when you file your Complaint, and you start trying to serve the parties. And when you give me some reason and basis for your inability to serve the parties, then I take that into consideration and grant the motion. Here, you couldn't have gotten effective service, ever, within the 120-day period, because you had no summons that was signed. It would have been impossible to have gotten service.

. . . .

I think these are misrepresentations to the Court, both in the January 13th, and restated in the February 10th, second motion. I think under the *Henyan* case[1] — I mean, the Court is going to accept these things on face value when you represent to me that you've got difficulty or problems, and those types of things, and I routinely will grant these motions.

But when, in essence, it is pointed out to the Court at a subsequent hearing that you could not have complied and obtained service within 120 days, I think the Motion is well taken.

On October 19, 2005, the court entered an order dismissing the complaint against all defendants. Appellants filed a timely notice of appeal.

Appellants first challenge the trial court's construction and application of Ark. R. Civ. P. 4(i). The appellate court uses an abuse-of-discretion standard to review a circuit court's decision on a motion to dismiss for noncompliance with Rule 4(i). *See Boyd v. Sharp County Circuit Court*, 368 Ark. 566, 247 S.W.3d 864 (2007).

Arkansas Rule of Civil Procedure 3 provides that an action is commenced by filing a complaint with the clerk of the proper court. *Bodiford v. Bess*, 330 Ark. 713, 956 S.W.2d 861 (1997). However, effectiveness of the commencement date is dependent upon meeting the requirements of Rule 4(i). *Id.* Upon the filing of the complaint, a summons must be dated and signed by the clerk and it must be under the seal of the court. Ark. R. Civ. P. 4(a) and (b). The summons and a copy of the complaint must be served

---

[1] *Henyan v. Peek*, 259 Ark. 486, 199 S.W.3d 51 (2004).

together. Ark. R. Civ. P. 4(d). Responsibility for getting these documents into the hands of the process-server rests with the plaintiff or the plaintiff's counsel. Reporter's Note 2 to Ark. R. Civ. P. 4; *Thomson v. Zufari*, 325 Ark. 208, 924 S.W.2d 796 (1996); David Newbern & John J. Watkins, *Arkansas Civil Practice & Procedure* § 9-3 (3d ed. 2002). Arkansas law is long settled that service of valid process is necessary to give a court jurisdiction over a defendant. *Tobacco Superstore, Inc. v. Darrough*, 362 Ark. 103, 207 S.W.3d 511 (2005). It is equally well settled that statutory service requirements, being in derogation of common law rights, must be strictly construed and compliance with them must be exact. *Id*. The same reasoning applies to service requirements imposed by court rules. *Id*. More particularly, the technical requirements of a summons set out in Ark. R. Civ. P. 4(b) must be construed strictly and compliance with them must be exact. *Id*. A summons that is not signed by the clerk does not comply with Rule 4. *Carruth v. Design Interiors, Inc.*, 324 Ark. 373, 921 S.W.2d 944 (1996). Judgments arising from proceedings conducted where the attempted service was invalid because of such noncompliance are void ab initio. *Id*.

Arkansas Rule of Civil Procedure 4(i) states that it is mandatory for the trial court to dismiss the action if service is not made within 120 days after the filing of the complaint and a motion to extend is not timely made. *Tobacco Superstore, Inc. v. Darrough, supra*. The rule provides in part:

> If service of the summons is not made upon a defendant within 120 days after the filing of the complaint, the action shall be dismissed as to that defendant without prejudice upon motion or upon the court's initiative. If a motion to extend is made within 120 days of the filing of the suit, the time for service may be extended by the court upon a showing of good cause.

Where the motion to extend time is filed prior to the expiration of the 120-day period, the trial court may grant the extension after the expiration of 120 days. *Edwards v. Szabo Food Service, Inc.*, 317 Ark. 369, 877 S.W.2d 932 (1994).

At the hearing, the attorney representing Food Plus, Cain, and Wilkinson argued that *Henyan v. Peek*, 359 Ark. 486, 199 S.W.3d 51 (2004), applied to this situation. In that case, the supreme court held that Rule 4(i) requires that the showing of good cause to extend the period of service must be made prior to the granting of an extension. There, the plaintiffs' motions offered

no cause for the extensions, and there was nothing in the trial court's orders indicating that the time for service was being extended upon a showing of good cause. Stating that the plaintiffs made no showing of good cause to extend the time for service under Rule 4(i) and that it was of no consequence that they later offered a reason, the supreme court affirmed the trial court's judgment setting aside the prior orders of extension and dismissing the complaint.

Appellants argue that, because they served appellees with process within the time limits of the extensions granted by the court and before appellees filed their motions to dismiss, they were entitled to rely on the trial court's extension orders, as in *King v. Carney*, 341 Ark. 955, 20 S.W.3d 341 (2000). In that case, the appellant (the plaintiff) moved for an extension of time for service so that she could identify and serve some John Doe defendants. She filed an addendum to her motion asserting that one of the appellees (the defendants) and the agent for service of process for his professional association were deceased. On the last day for serving process, she filed a second motion for an extension, referring to hospital reports she had received in discovery and stating that she needed time to explore settlement options. The same day, the circuit court granted the second motion for extension. Before the extended deadline ran, the appellees moved to dismiss the complaint; the appellant also obtained service on the appellees. The trial court entered an order finding that there had been no attempt to serve the appellees within 120 days and that no good cause existed to excuse this failure. The trial court said that its orders of extension were signed without knowledge that there had been no attempted service and set those orders aside. The supreme court reversed and remanded, explaining that King had obtained service of process on the appellees *before* the extension orders were revoked and that she had the right to rely on the extension orders that were in effect at the time service was obtained, even if they were erroneously granted.

▪ This case, however, is different from *King v. Carney* and *Henyan v. Peek*. Although allegedly good cause for the extensions was offered in a timely fashion, they were granted in reliance upon the plaintiff's attorney's misrepresentations. The trial court obviously believed that appellants had obtained the extensions by practicing a fraud on the court, which is a sufficient ground to vitiate a judgment. *McGuire v. Smith*, 58 Ark. App. 68, 946 S.W.2d 717 (1997). Even though the fraud that vitiates a judgment may be

constructive rather than actual, constructive fraud is nonetheless a species of wrongdoing. Constructive fraud is defined as a breach of a legal or equitable duty that, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others; neither actual dishonesty nor intent to deceive is an essential element. *Id.* Appellants' assertions that they were unable because of various unrelated difficulties to obtain service of a summons that had never been issued was, at the very least, constructive fraud. The trial court, therefore, did not abuse its discretion in setting aside the extensions and in dismissing the complaint on this ground.

Appellants also argue that Food Plus's motion to dismiss should have been denied on the basis of the doctrine of laches. They argue that, although Food Plus was served on February 23, 2005, it waited until August 2, 2005, to file its motion to dismiss; that Food Plus's attorney had no objection to their third and fourth motions for extension; and that Food Plus never filed a response to the motions for extension.

The doctrine of laches is based on a number of equitable principles that are premised on some detrimental change in position made in reliance upon the action or inaction of the other party. *Campbell v. Carter*, 93 Ark. App. 341, 219 S.W.3d 665 (2005). It is based on the assumption that the party to whom laches is imputed has knowledge of his rights and the opportunity to assert them; that, by reason of his delay, some adverse party has good reason to believe those rights are worthless or have been abandoned; and that, because of a change of conditions during this delay, it would be unjust to the latter to permit him to assert them. *Id.* Whether a claim is barred by laches depends on the particular circumstances of each case. *Id.* The issue is one of fact, and this court will not reverse the trial court's decision on a question of fact unless it is clearly erroneous. *Id.*

■ Laches does not apply here because there was no delay. Food Plus promptly raised the defenses of insufficiency of process and insufficiency of service of process in its answer. It was not yet a party to the action when appellants filed their first and second motions for extension and could not have responded to them. Also, the third and fourth motions for extension did not concern Food Plus, which had already been served and had filed an answer.

Affirmed.

BIRD and GRIFFEN, JJ., agree.